AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 2-12-2020)

# UNITED STATES DISTRICT COURT

for the

## Western District of Washington

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| Information associated with Four (4) Target | ) |
| Accounts/Identifiers, for Investigation of 21 | ) |
| U.S.C. § 841 and Other Offenses | ) |
| | ) |

Case No.  MJ21-5016

FILED _____ LODGED
_____ RECEIVED

**Jan 22, 2021**

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

## APPLICATION FOR A SEARCH WARRANT AND PEN-TRAP ORDER

I, a federal law enforcement officer or an attorney for the government, request a search warrant and pen-trap order, and state under penalty of perjury that I have reason to believe that on the person or property described in Attachment A-1 and A-2, located in the Western District of Washington, there is now concealed property and evidence described in Attachment B. This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

The basis for the search under Fed. R. Crip P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 841, 846 | Distribution and Possession with Intent to Distribute a Controlled Substance and Conspiracy. |

The application is based on the facts set forth in the attached affidavit, which is incorporated herein by reference with all attachments and exhibits. Pursuant to 18 U.S.C. § 3123(a)(1), Exhibit 1 to the affidavit includes a certification from an attorney from the government that the requested information is relevant to an ongoing criminal investigation.

☒ Delayed notice of 90 days (give exact ending date if more than 30 days: <u>April 22, 2021</u>) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 41, this warrant is presented by:
☒ by reliable electronic means; or ☐ telephonically recorded

_____
*Applicant's signature*

Steven J. Meyer, Special Agent
*Printed name and title*

☐ The foregoing affidavit was sworn before me and signed in my presence, or
☒ The above-named officer provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:  January 22, 2021

_____
*Judge's signature*

J. Richard Creatura, United States Magistrate Judge
*Printed name and title*

City and state:  Tacoma, Washington

USAO # 2020R00567

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR
### A SEARCH WARRANT AND PEN-TRAP ORDER

STATE OF WASHINGTON    )
                             )    ss
COUNTY OF PIERCE         )

I, Steven Meyer, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

I make this affidavit in support of an application for search warrants under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the following cellular telephones (collectively, the "Target Telephones"):

      a.    **Target Telephone 6** (**TT6**): a mobile telephone assigned the number 310-904-2025 and International Mobile Subscriber Identity (IMSI) number 310260658917394. **TT6** is a cellular telephone with service provided by T-Mobile, a wireless telephone service provider located at 12920 SE 38th Street, Bellevue, Washington, 98006. **TT6** is subscribed to Fernando Lopez at 4913 west 141st Street, Hawthorne, California, and believed to be used by Lopez MENDEZ FERNANDO Alcides. **TT6** is described herein and in Attachment A-1, and the location information to be seized is described herein and in Attachment B. Service to **TT6** began on November 5, 2013.

      b.    **Target Telephone 8 (TT8)**: a mobile telephone assigned the number 562-566-8067 and International Mobile Subscriber Identity (IMSI) number 310260271923207. **TT8** is a cellular telephone with service provided by T-Mobile, a wireless telephone service provider located at 12920 SE 38th Street, Bellevue, Washington, 98006. **TT8** is subscribed to Jose MALDONADO at 8953 Santa Fe Avenue, South Gate, California. **TT8** is described herein and in Attachment A-1. Service to **TT8** began on July 29, 2020.

      c.    **Target Telephone 9 (TT9)**: a mobile telephone assigned the number 360-728-7491 and International Mobile Subscriber Identity (IMSI) number 310240138880692. **TT9** is a cellular telephone with service provided by Sprint, a wireless telephone service provider located at 6360 Sprint Parkway, Overland Park, Kansas. **TT9** is subscribed to Joseph EASTON at 134 Elm Street, Unit B, Bremerton, Washington. **TT9** is described herein and in Attachment A-2, and the location

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 1
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

information to be seized is described herein and in Attachment B.  Service to **TT9** began on December 19, 2020.

        d.      **Target Telephone 10 (TT10)**: a mobile telephone assigned the number 442-363-2754 and International Mobile Subscriber Identity (IMSI) number 310260041289038.  **TT10** is a cellular telephone with service provided by T-Mobile, a wireless telephone service provider located at 12920 SE 38th Street, Bellevue, Washington, 98006.  **TT10** is subscribed to Carlos Gutierrez at 496 Street Avenue, Bell Gardens, California, but believed to be used by Jose MALDONADO.  **TT10** is described herein and in Attachment A-1, and the location information to be seized is described herein and in Attachment B. Service to **TT10** began on January 3, 2021.

2.      The wireless telephone service providers identified in Paragraph 1(a)-(d) are referred to throughout this affidavit and attachments as the "wireless providers," "the wireless service providers," or "the wireless service providers identified in Attachment A-1 and A-2."

ECPA

3.      The Court has jurisdiction to issue the proposed warrants under the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

Pen Register Act

4.      Because these warrants seek the prospective collection of information that falls within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrants are designed to comply with the Pen Register Act, 18 U.S.C. §§ 3121-3127.

5.      The Court has jurisdiction to issue the requested pen-trap orders because it is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2).  Specifically, the Court is a district court of the United States that "has jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A)(i).

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 2
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

6.      This application includes all the information required by the Pen Register Act.  *See* 18 U.S.C. §§ 3122(b) & 3123(a)(1).  Namely, Exhibit 1 to this application is a certification from Assistant United States Attorney Benjamin T. Diggs that (1) identifies the Drug Enforcement Administration (DEA) as the law enforcement agency conducting the investigation and (2) certifies the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency.  18 U.S.C. § 3122(b).  The Assistant United States Attorney is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

7.      A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted."  18 U.S.C. § 3127(3).  A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication."  18 U.S.C. § 3127(4).

8.      In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls.  Similar principles apply to other kinds of wire and electronic communications such as emails, text messages, connection logs, and data transfers.  The prospective location data sought in this application constitutes "dialing, routing, addressing, and signaling information" covered by the Pen Register Act.  Accordingly, the requested warrant will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with the Target Telephones without geographic limit.

9.      The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order through Attachment B of the requested warrant that Sprint and T-Mobile, and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this warrant furnish, upon service of the warrant, information, facilities, and technical

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 3
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

assistance necessary to install the pen/trap, including installation and operation of the pen-trap unobtrusively and with minimum disruption of normal service.  Any entity providing such assistance shall be reasonably compensated by the DEA, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of the warrant.

**10.     Through this application, the United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).**

## AGENT BACKGROUND

11.     I am a Special Agent with the DEA, and have been since March 2017.  I am currently assigned to the Seattle Field Division, Tacoma Resident Office.  Prior to my employment with the DEA, I worked as a Uniformed Officer with the Secret Service in Washington, D. C. from June 2006 to April 2009.  I received formal training at the DEA Basic Agent Training in Quantico, Virginia.  The four-month Basic Academy included comprehensive, formalized instruction in, among other things: basic narcotic investigations, drug identification and detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations.

12.     During the course of my law enforcement career, I have been involved in investigations of numerous criminal offenses, including the offenses involved in the current investigation.  I have participated in criminal investigations of illicit drug trafficking organizations, ranging from street-level dealers to major dealers, to include Mexico-based drug trafficking organizations.  These investigations have also included the unlawful importation, possession with intent to distribute, and distribution of controlled substances; the related laundering of monetary instruments; the conducting of monetary transactions involving the proceeds of specified unlawful activities; and conspiracies associated with criminal narcotics offenses.  These investigations have included use of

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 4
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the following investigative techniques: confidential informants; undercover agents; analysis of pen register, trap and trace, and toll records; physical and electronic surveillance; wiretaps; and the execution of search warrants.  I have had the opportunity to monitor, listen to, and review transcripts and line sheets (prepared by linguists) documenting the content of intercepted conversations involving the trafficking of cocaine, heroin, methamphetamine, fentanyl, and other narcotics, by persons who used some form of code to thwart law enforcement.  I have also interviewed defendants at the time of their arrests and have debriefed, spoken with, or interviewed numerous drug dealers or confidential sources (informants) at proffer interviews who were experienced in speaking in coded conversations over the telephone.  I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by drug traffickers in the course of their criminal activities, including their use of cellular telephones and other electronic devices to facilitate communications while avoiding law enforcement scrutiny.

13.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and pen-trap, and therefore does not set forth all of my knowledge about this matter.

14.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841 (distribution of, and possession with intent to distribute, controlled substances) and 846 (attempt and conspiracy to commit the above controlled substance offenses) have been committed, are being committed, and will be committed by Jose MALDONADO, and other identified and unidentified persons.  There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses as well as locations and other assets (such as vehicles and real estate) that are used in their commission.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 5
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## SOURCES OF INFORMATION

15.     I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; from witnesses and informants cooperating with law enforcement, and from records, documents and other evidence obtained during this investigation.  I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other investigations by DEA.

16.     When this affidavit refers to vehicle ownership, either I or other agents involved in the investigation have reviewed the relevant state vehicle records from the Washington State Department of Licensing (DOL), or the equivalent agency in other states.  Similarly, when I refer to identification documents, either I or other agents involved in the investigation have reviewed the relevant driver license or similar records maintained by DOL or the equivalent agency in other states.  When I refer to the criminal history of a subject, either I or other agents involved in the investigation have reviewed the available criminal history from state or federal agencies.  When I refer to telephone subscription records, either I or other agents involved in the investigation have reviewed the subscriber records obtained from the telephone company by administrative subpoena or court order, or I have obtained the information from other law enforcement officers familiar with this investigation.  When I refer to telephone toll records, either I or other agents involved in the investigation have received the information from the telephone company pursuant to an administrative subpoena or court authorized pen registers.  When I refer to beliefs or suspicions held by investigators, these beliefs or suspicions are based upon training and experience.

17.     During the investigation described below, agents have used the assistance of confidential sources, referred to as Confidential Source 1 (CS1) and Confidential Source 2 (CS2).

18.     Confidential Source 1 (CS1) is providing information and assistance to the DEA in exchange for favorable recommendation for a pending charge.  CS1 has

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 6
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

previously cooperated with detectives from Bremerton's Special Operations Group (SOG) as a "mercenary" working in exchange for monetary payment. In October of 2019, CS1's information assisted in the seizure of approximately a half pound of heroin from a drug distributor in Bremerton, Washington during a search warrant.  Shortly thereafter, CS1 fell out of contact but later detectives discovered CS1 was dealing heroin.  They used a separate CS (CS2) to conduct a controlled purchase of several grams of heroin from CS1.  Bremerton SOG detectives deactivated CS1 but did not alert him/her to the deactivation as the detectives intended to complete more controlled purchases.  However, CS2 was not able to complete further purchases because CS1 refused to sell more or was out of controlled substances.

19.    CS1 contacted detectives in November of 2019 and said he/she believed they had completed a controlled buy from him/her.  CS1 requested a meeting.  In January 2020, Detectives met with CS1 and he/she admitted to selling heroin and methamphetamine for a short period of time in the fall of 2019.  CS1 admitted he/she had made a mistake and had relapsed and started using methamphetamine again during the time he/she was dealing.  CS1 said he/she was clean and wished to continue working as a confidential source.  CS1 was forthcoming about the main supplier whom CS2 had told detectives about.  CS1 also provided information about other prominent drug traffickers in the Puget Sound Region, which agents were able to verify through other sources independent of CS1's knowledge.

20.    In February of 2020, during a residential search warrant at a house CS1 was frequenting, agents found a bag belonging to CS1. During a search of the purse they located a used syringe inside with a dark fluid and blood inside of it. Agents later confronted CS1 about the syringe.  CS1 told agents he/she was currently clean. Agents described the syringe to CS1.  CS1 stated he/she had injected methamphetamine in the past and if there was methamphetamine in the syringe then it could belong to him/her, and was old.  CS1 admitted he/she had recently purchased clean syringes for an associate

who also frequented the search warrant location. CS1 stated he/she did not use heroin but the person for whom he/she purchased the clean syringes did.

21.    Several days after the search warrant was served at the address, CS1 contacted agents nearby the residence. During this meeting, CS1 gave agents an oxycodone pill suspected to be laced with fentanyl. CS1 told them that they had missed the item in the kitchen area of the residence and he/she wanted to turn it over. Agents collected the pill and later submitted it into evidence.

22.    During a subsequent meeting with CS1, he/she was driving a vehicle associated with the search warrant address. This particular vehicle was searched on the day of the search warrant during a consent search. CS1 advised he/she had found methamphetamine hidden inside of the vehicle. CS1 met with agents and turned the substance over. Agents later entered the substance into evidence.

23.    In March of 2020, during a pre-buy search of CS1's vehicle, agents found a syringe between the bottom and back of the driver's seat. Agents were unable to tell if the syringe was used and later disposed of it in a sharps container. They questioned CS1 about the syringe. CS1 stated he/she was still clean and the syringe did not belong to him/her. CS1 said he/she was recently borrowing the vehicle from another individual. This was the same vehicle CS1 had found the methamphetamine in and turned over to law enforcement.

24.    During a post-buy search of CS1's vehicle in May of 2020, detectives found money inside a coin purse which was unaccounted for during the pre-buy search. Agents questioned CS1 about the money and where it had come from. CS1 said it was his/her money and not part of the official funds used to purchase the evidence. During the buy, CS1 was able to acquire the evidence for less and returned a portion of the money to agents. I believe the money found inside CS1's vehicle was there prior to the deal and missed during the search.

25.    During a post-buy review of video footage following a deal in June of 2020, agents observed money inside the CS1's vehicle which was unaccounted for during

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 8
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the vehicle searches. I questioned CS1 about the money and where it had come from. CS1 said it was his/her money and not part of the official funds used to purchase the evidence. I believe the money found inside CS1's vehicle was there prior to the deal and missed during the searches.

26.     In late June 2020, during a pre-buy search of CS1's vehicle, agents found suspected methamphetamine in the back seat. Agents asked CS1 where it had come from and he/she said prior to the meeting that he/she had an associate in the vehicle who used drugs. CS1 said he/she suspected the associate was on drugs while in the vehicle and they left the methamphetamine while departing. CS1 denied any knowledge of the drugs being in the car. Later in the day, agents conducted a second deal involving CS1. During the pre-buy search of CS1's vehicle agents identified possible drug paraphernalia in the back seat. Agents asked CS1 about the paraphernalia and he/she said more friends had been in the vehicle's back seat and he/she was unaware of any paraphernalia.

27.     At this time, CS1 has completed 13 controlled purchases of controlled substances and one money delivery. Prior to and after each purchase, CS1 and his/her vehicle was searched. Besides the instances noted above, no additional contraband or currency has been located during these searches. It should be noted before, during, and after each deal, CS1 has been directed to follow a series of instructions which he/she has done. CS1 has made statements to me against his/her own penal interest. Many of these deals have involved CS1 spending hours assisting detectives as well as spending hours driving to and from deals. Agents have financially assisted CS1 during his/her time cooperating with DEA.

28.     CS1 has eight felony convictions total. In the last ten years, CS1 has felony convictions for Criminal Mischief-Deadly Weapons, Possession of a Controlled Substance, and Organized Retail Theft 2. Prior to ten years ago, CS1 has convictions for Theft 2, VUCSA Possession, Theft 1, Possession of a Firearm, and VUCSA Possession. CS1 has 13 total gross misdemeanor convictions and 10 total misdemeanor convictions. Within the last 10 years CS1 has convictions for Theft 3, Malicious Mischief 3, two

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 9
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

convictions for Obstruction, and two convictions for Making False Statements.  CS1 has misdemeanor convictions within the last ten years for Criminal Trespass II, Failure to Obey Officer, and 4 convictions for DWLS 3rd.

29.     At this time, CS1's information has led to the identification of prominent Mexico-based drug traffickers operating in Washington, as well as other states.  CS1's cooperation has led to the seizure of approximately 46 lbs. of methamphetamine, several ounces of heroin, approximately $178,000 dollars, and 65 firearms.  At least ten of the firearms were stolen.  Based on the facts and circumstances, I believe CS1 is telling the truth in regards to his/her knowledge pertaining to narcotics activity in Washington, particularly the information pertaining to this investigation.

30.     Confidential Source 3 (CS3) is providing information and assistance to the DEA in exchange for favorable recommendation for a pending charge.  During the late summer months of 2019, Bremerton Special Operations Group (SOG) detectives investigated CS3, which resulted in his/her arrest.  CS3 cooperated with law enforcement and agreed to work as a confidential source.  CS3 provided information on criminal activity occurring in Kitsap County, some of which detectives were able to verify through independent sources.  CS2 also made statements about drug use and drug dealing, which were against their penal interest.

31.     Between late 2019 to early 2020, CS3 completed two controlled purchases of narcotics.  CS3 followed a series of instructions prior to, and during the transactions. CS3 was searched before and after the deals with no contraband discovered.  However, in early 2020, CS3 fell out of contact for a period.  In the summer of 2020, detectives contacted CS3 and found drug paraphernalia.  CS3 admitted to relapsing (methamphetamine) and dealing narcotics again.  CS3 told detectives he/she wished to continue working with them and complete their agreement.  Since agreeing to work with law enforcement again, CS3 has completed 5 additional controlled purchases of narcotics.  CS3 has followed a series of instructions prior to and during the transactions. CS3 was searched before and after the deals; no contraband was discovered.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 10
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

32.     CS3 has three felony convictions; for manufacturing/delivery of methamphetamine, for possession stolen property, and for obstructing law enforcement officer.  During the 7 total controlled purchases CS3 has completed, he/she provided statements about the transactions that were consistent with detectives' observations.  Accordingly, I believe the information provided by CS3 regarding this application is credible and reliable.

## PROBABLE CAUSE

33.     In early January 2020, agents met with CS1 regarding drug distributors in western Washington.  During that initial interview and subsequent interviews, he/she described a Hispanic female and Hispanic male whom he/she knew as Iris ADREANNA and B. GARCIA who were significant methamphetamine distributors in Pierce and Kitsap counties working for a boss named Jose MALDONADO.  Agents have since identified Iris ADREANNA as Iris AMADOR-GARCIA and B. GARCIA as Bayroneberto GARCIA-PEREZ.

34.     CS1 said he/she had known AMADOR-GARCIA since late 2019 and was given narcotics from AMADOR-GARCIA in the past.  CS1 initially believed AMADOR-GARCIA lived in the vicinity of Tacoma, Washington, but later learned she was from California.  CS1 said he/she had known GARCIA-PEREZ since January 2020 and observed GARCIA-PEREZ supply narcotics.  CS1 believed GARCIA-PEREZ was also from California.  CS1 told agents that AMADOR-GARCIA and GARCIA-PEREZ have multiple drug customers in Pierce and Kitsap counties.  CS1 said that AMADOR-GARCIA and GARCIA-PEREZ's boss, Jose MALDONADO, also lives in California.  CS1 has stated AMADOR-GARCIA and MALDONADO are married.

35.     During the week of January 22, 2020, CS1 informed agents that AMADOR-GARCIA and GARCIA-PEREZ were in Sumner, Washington delivering methamphetamine, and getting money from drug customers.  CS1 provided a picture of some of the methamphetamine to agents.  Additionally, CS1 informed agents that AMADOR-GARCIA and GARCIA-PEREZ were driving a white Dodge Ram bearing

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 11
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Minnesota License CWN703.  Agents searched Department of Licensing (DOL) records and determined the vehicle was registered to the Enterprise Rental Company and that Bayroneberto GARCIA-PEREZ, providing an address of 2752 ½ Cogswell Road, El Monte, California, rented the vehicle on January 20, 2020 and was expected to return it on January 27, 2020.  Agents also determined that GARCIA-PEREZ rented the vehicle in Huntington Park, California and left a contact number of 323-537-6907.  CS1 told agents that GARCIA-PEREZ and AMADOR-GARCIA were staying at the Hampton Inn at 7200 South 156th Street, Tukwila, Washington.  On January 24, 2020, I drove to that location and confirmed the Dodge Ram was there, and later observed an unidentified Hispanic female leave the Hampton Inn with two unidentified Hispanic males and get into the Dodge Ram.  I took pictures of the unidentified Hispanic female and showed them to CS1 who confirmed it was AMADOR-GARCIA.  Around January 26, 2020, CS1 informed agents that AMADOR-GARCIA and GARCIA-PEREZ were going back south to California in order to pick up additional methamphetamine.  CS1 thought they would be coming back later in the week and said they had asked for him/her to arrange for a hotel room.

### *MALDONADO Comes to Washington*

36.     During the week of February 1, 2020, CS1 told agents that MALDONADO was calling CS1 using 562-566-8236.  CS1 said MALDONADO had driven back up [from California] with methamphetamine because AMADOR-GARCIA was sick.  CS1 said MALDONADO wanted to give CS1 methamphetamine to distribute.

37.     On February 3, 2020, CS1 told agents that MALDONADO was with him/her.  CS1 said MALDONADO and his associate were driving a white Ford truck bearing California license 50170F2.  Agents determined the truck had a registered owner of Alcides Lopez MENDEZ FERNANDO Alcides at 712 East Hardy Street, Apartment 7, Inglewood, California.  Later in the day, I observed MALDONADO and an associate exiting the truck.  CS1 told detectives that MALDONADO agreed to give him/her the methamphetamine later in the week.  CS1 explained that MALDONADO had checked

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 12
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

out of his hotel and intended to drive back to California that day, but return quickly and provide the methamphetamine.  Agents on surveillance later confirmed MALDONADO and his associate drove towards Interstate 5 (I-5) around the time CS1 said he would leave.  A short time later, I requested California Department of Licensing (DOL) information for Lopez MENDEZ FERNANDO Alcides.[1]  A comparison of MENDEZ FERNANDO's DOL photo and the associate traveling with MALDONADO was a match.

38.     On February 4, 2020, CS1 told agents that MALDONADO was texting messages from an encrypted phone application saying he (MALDONADO) would be coming back with methamphetamine and "China White."  Based on my training and experience, I know the term "China White" can be used to refer to heroin laced with fentanyl. CS1 showed the messages to agents.  The messages include how much "China White" MALDONADO intends to send and a discussion on what the approximate prices are in California versus Washington for "China White." MALDONADO also asked CS1 how much he/she could sell the "China White" for, based on the amount he (MALDONADO) was bringing, and CS1 responded $80,000.

### *MALDONADO Returns to Washington with AMADOR-GARCIA*

39.     On February 5, 2020, Kitsap County Superior Court Judge, the Honorable Jennifer A. Forbes, authorized electronic tracking of MALDONADO's 562-566-8236 number.  Shortly thereafter, agents/detectives initiated tracking and confirmed MALDONADO's phone was in the vicinity of Los Angeles, California.

40.     On February 16, 2020, CS1 told agents that MALDONADO was driving up from California and wanted to meet to give him/her methamphetamine to distribute. Electronic tracking confirmed MALDONADO's phone had moved from Los Angeles to the vicinity of Tukwila, Washington.  CS1 said MALDONADO wanted him/her to come to the Southcenter Mall to get the methamphetamine.  Agents met with CS1 at a pre-

---

[1] In previous affidavits, I have referred to this individual as "Alcides Lopez MENDEZ FERNANDO," based on my understanding of the order of his names.  However, the California DOL information identifies him as Lopez Mendez Fernando Alcides, so I will hereafter refer to him as Lopez MENDEZ FERNANDO Alcides in this Affidavit.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 13
USAO # 2020R00567

determined location and searched him/her with negative results.  They directed CS1 to contact MALDONADO and confirm a meeting at the mall.  MALDONADO wanted to meet CS1 at the Best Buy at 17364 Southcenter Parkway, Tukwila, Washington. Surveillance agents and detectives moved into position and monitored CS1 as he/she met with MALDONADO at the Best Buy.  At the completion of the meeting, agents met with CS1 at a neutral location, searched him/her with negative results, and conducted a debrief.  CS1 said MALDONADO talked with him/her about drug business but did not have the methamphetamine.  CS1 said MALDONADO had another deal to complete and then would bring CS1 the methamphetamine.  CS1 said MALDONADO was probably staying at the Doubletree Suites by Hilton at 16500 Southcenter Parkway, Seattle, Washington.  Agents stayed with CS1 until the next meet up with MALDONADO.

41.     A few hours later, CS1 contacted MALDONADO and he confirmed they could meet and do the deal at the Doubletree Suites by Hilton hotel.  Surveillance units moved into position at the hotel in order to observe the meeting.  A DEA Task Force Officer observed MALDONADO standing outside the hotel while additional surveillance agents/detectives monitored CS1 as he/she moved to the meet location.  Shortly thereafter, MALDONADO and CS1 met and completed the controlled delivery of methamphetamine.  Throughout the transaction, CS1 and agents were in communication. After the deal, agents followed CS1 to a secure location.  CS1 gave the narcotics to a Bremerton SOG detective and confirmed MALDONADO had given them to him/her. Agents searched CS1 with negative results.  CS1 said MALDONADO would be in town for a few days and would want payment for the methamphetamine.  Shortly thereafter, the methamphetamine was field tested and returned presumptive positive for the presence of methamphetamine.

42.     On February 18, 2020, agents met with CS1 in order to pay MALDONADO for the methamphetamine.  Agents searched CS1 with negative results and issued him/her the prerecorded funds.  CS1 said MALDONADO wanted to meet at the Tacoma Mall at 4502 South Steele Street, Tacoma, Washington.  Surveillance units

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 14
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

moved into the vicinity of the mall and identified a 2019 Chevrolet Traverse, California license 8JQV776. Agents had observed the Traverse being used by MALDONADO after his meeting with CS1 at the Best Buy in Tukwila, and later parked at the Doubletree hotel. Following that, surveillance units and agents monitored CS1 as he/she moved to MALDONADO's vehicle and got inside. Throughout the transaction, agents drove past the Traverse to ensure it was still in place. After the transaction, surveillance units maintained observation of CS1 back to the neutral spot. Prior to debriefing CS1, he/she was searched with negative results. CS1 said MALDONADO wanted him/her to sell more drugs and intended to bring up the "China White" on the next trip. CS1 said MALDONADO also talked about having cocaine for customers. CS1 said he/she had observed AMADOR-GARCIA around the mall after leaving MALDONADO's vehicle. CS1 had previously said AMADOR-GARCIA came with MALDONADO on the trip.

### *Controlled Delivery with AMADOR-GARCIA*

43. At the end of February, electronic tracking on MALDONADO's 562-566-8236 phone showed it steadily move east from Los Angeles to the vicinity of Memphis, Tennessee. Shortly thereafter, CS1 alerted agents/detectives that MALDONADO had acquired an additional phone number, 901-436-2619. 901 is an area code for Memphis, Tennessee. Electronic tracking on MALDONADO's 562-566-8236 showed the phone consistently traveling between Memphis, Tennessee and Blytheville, Arkansas.

44. On March 2, 2020, Kitsap County Superior Court Judge, the Honorable Kevin D. Hull, authorized electronic tracking of MALDONADO's 901-436-2619 number. A few days later, agents initiated tracking and confirmed MALDONADO's new phone was also in the vicinity of Memphis, Tennessee.

45. Later that day, CS1 told agents that MALDONADO had called and told him/her that AMADOR-GARCIA was driving up from California to deliver drugs to customers. Additionally, CS1 said MALDONADO told him/her that AMADOR-GARCIA had up to 15-20 pounds of methamphetamine available to purchase. I directed CS1 to speak with MALDONADO and arrange the purchase of 4 pounds of

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 15
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

methamphetamine from AMADOR-GARCIA.  MALDONADO agreed to the deal and told CS1 that AMADOR-GARCIA would meet him/her at the Ross Dress for Less at 17672 Southcenter Parkway, Tukwila, Washington.  MALDONADO used 901-436-2619 to set up the deal between CS1 and AMADOR-GARCIA.

46.     Agents met with CS1 at a pre-determined location and searched his/her person and vehicle with negative results.  Following that, I provided final instructions and gave CS1 the prerecorded funds.  Simultaneously, surveillance units moved into position at the Ross Dress for Less to try and identify AMADOR-GARCIA's vehicle.  Shortly thereafter, I directed CS1 to drive to the meet location.  Agents maintained surveillance of CS1 along the entire route.  Shortly after parking at the Ross, CS1 was contacted by MALDONADO and told to walk towards the store.  A few minutes later, a West Sound Narcotic Enforcement Team (WESTNET) detective observed AMADOR-GARCIA walk out of the Ross's with an unidentified Hispanic female.  AMADOR-GARCIA and the unidentified female walked to a Dodge Journey, California license plate 8EMC854, and AMADOR-GARCIA got inside while the unidentified female stood outside.  Shortly thereafter, CS1 walked to the Journey and got inside.  After approximately 10 minutes, the same detective observed CS1 exit the Journey, walk back to his/her vehicle, and depart the area.  The detective also watched AMADOR-GARCIA and the unidentified female walk back into the Ross shortly after CS1's departure.  Throughout the transaction, CS1 and agents were in communication.

47.     After the deal, agents followed CS1 back to the pre-determined location.  CS1 gave the narcotics to me and confirmed AMADOR-GARCIA had given them to him/her.  Agents searched CS1's person and vehicle with negative results and conducted a debrief.  CS1 said MALDONADO had contacted him/her during the drive away from the deal location and said AMADOR-GARCIA had additional methamphetamine if he/she needed it.  Shortly thereafter, the methamphetamine was field tested and returned presumptive positive for the presence of methamphetamine.

_MALDONADO Stopped with Narcotics while Coming to Washington_

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 16
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

48.   On April 13, 2020, Kitsap County Superior Court Judge, the Honorable Kevin D. Hull, authorized electronic tracking of MALDONADO's 562-566-8236 number.  Shortly thereafter, agents initiated tracking and confirmed MALDONADO's phone was in the vicinity of Los Angeles, California.

49.   During the week of May 15, 2020, CS1 told detectives that MALDONADO had contacted him/her, using 562-566-8236, and was driving up from California.  CS1 said MALDONADO had told him/her that there was an extra 10 pounds of methamphetamine available for purchase when he arrived in Washington.  Shortly thereafter, agents confirmed tracking on MALDONADO's phone (562-566-8236) that showed it north of Sacramento, California.

50.   On May 16, 2020, at approximately 5:00 a.m., agents identified a white Ford truck, California license 50170F2, traveling northbound on Interstate-5 in the vicinity of Chehalis, Washington.   Department of Licensing (DOL) records confirmed it was the truck registered to MENDEZ FERNANDO, last seen in western Washington in February during a previous MALDONADO trip, as described above.  Shortly thereafter, Centralia Police conducted a traffic stop on the vehicle for excessive speed and confirmed MALDONADO and MENDEZ FERNANDO as the occupants.  A few minutes later, a Centralia K9 Officer arrived and deployed his dog on the vehicle, which resulted in a positive alert.  The officers informed MENDEZ FERNANDO and MALDONADO of the positive alert and that the vehicle would be seized.

51.   At approximately 6:45 a.m., the Centralia Municipal Court for Lewis County issued a search warrant for the vehicle, and the subsequent search resulted in the seizure of approximately 10 pounds of suspected methamphetamine.  Officers field tested the suspected methamphetamine and it was presumptive positive for methamphetamine.

52.   Later that day, MALDONADO contacted CS1 using phone number 253-226-1325.  CS1 said the number was MALDONADO's new phone and that he was currently in Tacoma, Washington trying to figure out a way to go back to California.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

MALDONADO told CS1 that once he got back to California he would only be there a short time before coming back to Washington with more methamphetamine and pills.

*Controlled Delivery with MALDONADO and Alysha JONES*

53.     During the week of June 8, 2020, CS1 said MALDONADO told him/her that he had associates in western Washington that would help him distribute drugs. Additionally, some of the associates had agreed to come to California in order to transport drugs back to Washington.

54.     During the week of June 23, 2020, Agents met with CS1 and he/she said MALDONADO told him/her that he was driving up to Washington in a few days but would not be transporting drugs.  CS1 said MALDONADO's associates would be driving the drugs from California.  CS1 said he/she believed MALDONADO would have methamphetamine and suspected fentanyl pills available for customers.  Additionally, CS1 said MALDONADO was using a new phone number, 562-231-8282.  I directed CS1 to discuss buying the suspected fentanyl pills from MALDONADO when he drove back to Washington.  CS1 said he/she would set it up.

55.     On June 25, 2020, Kitsap County Superior Court Judge, the Honorable William C. Houser, authorized electronic tracking of MALDONADO's 562-231-8282 number.  A few days later, agents initiated tracking on the number and confirmed MALDONADO's phone was in the vicinity of Tukwila, Washington.

56.     On June 30, 2020, agents met with CS1 at a pre-determined neutral location in order to complete a controlled buy from MALDONADO for fentanyl pills.  CS1 was searched with negative results.  CS1's vehicle was also searched and agents identified a small amount of suspected methamphetamine in the back seat.  CS1 said prior to meeting with agents an associate had been in the back seat who used drugs.  CS1 said he/she suspected the associate was on drugs while in the vehicle and left the suspected methamphetamine in the car while departing.  CS1 denied any knowledge of the drugs being in the vehicle.  Agents seized the suspected methamphetamine.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 18
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

57.     I then directed CS1 to contact MALDONADO and confirm the deal time and location.  CS1 called MALDONADO at 562-231-8282, and MALDONADO confirmed the deal would take place at the Doubletree Suites by Hilton Hotel at 16500 Southcenter Parkway, Seattle, Washington, at around 1:00 p.m.

58.     At approximately 12:30 p.m., agents assumed position in the vicinity of the hotel in anticipation of the deal.  Simultaneously, agents equipped CS1 with a listening/recording device and gave him/her the pre-recorded funds to complete the deal. Following that, agents directed him/her to drive to the hotel and park.  Surveillance was maintained along the entire route.

59.     At approximately 1:15 p.m., agents observed a black 2019 Jeep Grand Cherokee, New York license JBC6410, arrive and park at the hotel.  Department of Licensing (DOL) records indicate the vehicle is registered to the PV Holding Corporation at 90-20 GRND CTRL PKWY, East Elmhurst, New York.  Agents observed an unidentified female, later identified as Alysha JONES, exit the vehicle.  CS1 then walked over from his/her vehicle and got inside the Jeep. After approximately 10 minutes, agents observed CS1 exit the Jeep, walk back to his/her vehicle, and depart the area. Surveillance was maintained on CS1 during the entire route back to the neutral location.

60.     At approximately 1:40 p.m., agents met CS1 at the neutral location and searched his/her vehicle with negative results.  CS1 handed agents a clear plastic bag with the suspected fentanyl pills and the listening/recording device.  Based on my training and experience, the color and labeling on the pills were consistent with fentanyl pills.  CS1 said MALDONADO had only given him/her a portion of the pills and said he would need to go get the rest.  I asked CS1 if he/she had given MALDONADO all the pre-recorded funds and CS1 said he/she had.  I acknowledged the response and released CS1 from the scene with the instructions to stay in the area in preparation for the completion of the deal.

61.     At approximately 6:00 p.m., agents met with CS1 at a pre-determined location in order to complete the deal.  CS1's person was searched with negative results.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 19
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

CS1's vehicle was also searched and possible drug paraphernalia was identified and seized. Agents asked CS1 if he/she was aware of the paraphernalia and CS1 said he/she was unaware and that additional occupants had been in the vehicle since he/she left earlier. I acknowledged the statement and directed CS1 to contact MALDONADO and determine what time the deal would be completed. CS1 called MALDONADO and he said he was in Auburn and would be coming back in around 30 minutes.

62.     At approximately 8:15 p.m., I directed CS1 to call MALDONADO again and determine what the situation was. CS1 called MALDONADO and he said he/she should come to Auburn to complete the deal. MALDONADO provided an address of 206 2nd Street SW, Auburn, Washington. Surveillance units moved into position for the new deal location. Simultaneously, I provided CS1 with the listening/recording device and instructed him/her to drive to the deal location. Agents maintained surveillance on CS1 along the entire route from the neutral spot to the deal location.

63.     At approximately 8:40 p.m. agents observed MALDONADO's Jeep parked at 206 2nd Street SW and saw MALDONADO and JONES a short distance away. Shortly thereafter, CS1 arrived and parked near the Jeep. Agents observed MALDONADO walk to CS1's vehicle and get inside. Around 10 minutes later, agents observed MALDONADO exit CS1's vehicle and walk a short distance away. Following that, CS1 left 206 2nd Street SW and traveled to a pre-determined neutral spot. Agents maintained surveillance on CS1's vehicle the entire route.

64.     At approximately 9:00 p.m., agents met with CS1 at a neutral spot and searched his/her vehicle with negative results. CS1 handed agents a clear plastic bag with the suspected fentanyl pills and the video/recording device. Based on my training and experience, I believed the pills color and labeling were consistent with fentanyl pills. I asked CS1 to describe how the deal went. CS1 said he/she met with MALDONADO and he gave him/her the pills. CS1 said when MALDONADO initially got into the vehicle, he had additional pills but said CS1 did not have enough money, that he was charging $10 a pill and not $7. MALDONADO called JONES over and she took the pills

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 20
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

back to the Jeep and counted out the amount MALDONADO said and brought them back to him.  CS1 said he/she complained to MALDONADO about prices being higher.  MALDONADO explained that prices for everything were going up.  Following that, CS1 said MALDONADO wanted him/her to buy an additional 1000 pills and CS1 said no.  Agents then directed CS1 to call MALDONADO and complain about the prices again, which he/she did.  Following the deal, I reviewed the recorded conversations between CS1 and MALDONADO.  CS1 accurately represented what was discussed between them.

### *Controlled Delivery from MALDONADO Associate Malaquias LOPEZ-CHAVEZ*

65.     During the week of August 5, 2020, agents observed GPS tracking on MALDONADO's 562-231-8282 number indicating it was in the vicinity of Los Angeles, California.  Agents contacted CS1 and directed him/her to call MALDONADO and attempt to set up a deal for additional fentanyl pills.  CS1 contacted MALDONADO and he agreed to sell him/her 500 pills for $3500, but explained his "cousin" would meet him/her to do the deal.  MALDONADO also said he had a new phone number, 213-706-3231 (TT1).

66.     On August 5, 2020, at approximately 3:45 p.m., agents met with CS1 at a pre-determined neutral location in order to do the controlled buy with MALDONADO's "cousin."  CS1's vehicle and person were searched with negative results.  CS1 told agents MALDONADO had been in contact, using TT1, and had confirmed his "cousin" could do the deal and would meet him/her at the Tacoma Mall, near JC Penney.  MALDONADO also provided a number of 253-387-8922 (TT2) for the cousin.  Additionally, MALDONADO said the "cousin" lived close to the Tacoma Mall.

67.     Surveillance units initiated a search of known locations where MALDONADO had been observed while staying in Tacoma.  Specifically, they drove to 4315 South Warner Street, Tacoma, Washington, where agents believed, based on prior surveillance and location information, MALDONADO had spent multiple nights.  Upon arrival at 4315 Warner Street, agents identified a silver 2007 GMC New Sierra,

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 21
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Washington license C69963G (hereinafter Target Vehicle 1 or TV1).  Shortly thereafter, an unidentified Hispanic male, later identified as Malaquias LOPEZ-CHAVEZ, as detailed below, approached TV1 and got inside.  Agents followed TV1 to the Tacoma Mall at 4502 South Steele Street, Tacoma, Washington, where it parked near the JC Penney store.

68.     At approximately 4:00 p.m., agents equipped CS1 with a listening/recording device, gave him/her the pre-recorded funds to do the deal, and told him/her to ask the "cousin" about his ability to get heroin during the deal.    Agents then directed CS1 to drive to the JC Penny.  Surveillance was maintained for the entire duration of the drive.  Upon arrival at the deal location, agents observed CS1 exit his/her vehicle and get into TV1.  Approximately 10 minutes later, Agents observed CS1 exit TV1, walk back to his/her vehicle, and depart the area.  Surveillance was maintained on CS1 the entire route back to the neutral location.

69.     At approximately 4:45 p.m., agents met with CS1 at the neutral location and searched his/her vehicle and person with negative results. CS1 handed agents a clear plastic bag with pills and the listening/recording device.  Based on my training and experience, I believed the pills color and labeling were consistent with fentanyl pills.  I asked CS1 to describe how the deal went.  CS1 said he/she met with the "cousin" and he gave him/her the pills.  CS1 said he/she asked about getting heroin and the "cousin" said he would try and let him/her know.  Agents directed CS1 to decline any opportunity to get heroin until directed otherwise and terminated the debrief.  Following the deal, I listened to the audio recording of the deal and it matched what CS1 one reported concerning the deal.  Later that day, CS1 contacted me and said the "cousin" had been in contact, using TT2, and said he could get the heroin.  CS1 declined the offer.

70.     At approximately 5:15 p.m., agents observed TV1 parked at 4315 South Warner Street, and the unidentified Hispanic male walk inside.

71.     A few days later, agents conducted a search of law enforcement databases focusing on known residents of 4315 South Warner Street, Tacoma, Washington.  The

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 22
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

results revealed a recent occupant named Malaquias LOPEZ-CHAVEZ.  Agents accessed the Department of Licensing (DOL) database and acquired a photo of LOPEZ-CHAVEZ. A comparison of the DOL photo with surveillance pictures of the "cousin" from August 5 appeared to be a match.  Agents also identified a Facebook account for LOPEZ-CHAVEZ and in one of the photos he is wearing what appears to be the same hat from the deal.  CS1 reviewed the Facebook photo and confirmed it was the same individual with whom he/she had done the deal.

### *MALDONADO Returns to Washington in Early September 2020*

72.     On August 19, 2020, the Honorable David W. Christel, United States Magistrate Judge for the Western District of Washington, authorized real-time GPS tracking of TT1.  A few days later, agents initiated tracking on the number and confirmed the phone was in the vicinity of Los Angeles, California.  On September 4, 2020, tracking on TT1 showed the phone moving north along I-5.  The following day, tracking on the phone showed it in the vicinity of 4315 South Warner Street, Tacoma, Washington. Agents conducted surveillance on the rear driveway of 4315 South Warner Street, utilizing a pre-positioned camera with a view of that area.  I observed a 2019 silver Mitsubishi, California license 8JZN855, parked in the driveway.  Department of Licensing (DOL) records list the registered owner of the vehicle as the PV Holding Corporation at 5721 West 96th Street, Los Angeles, California.  I know the PV Holding Corporation is owned by AVIS rental vehicles.  I contacted AVIS and learned the vehicle was rented on September 4, 2020 by MALDONADO, with a return date of September 18, 2020.  Later in the day on September 5, 2020, I observed MALDONADO in the rear driveway at 4315 South Warner Street meeting with multiple vehicles, each for a short duration of time.  In some cases, I observed him carrying objects to the vehicles and taking objects back to the house.  Based on my training and experience, and the investigation to date, I believed MALDONADO was meeting with drug customers.

73.     On September 8, 2020, Agents met with CS1 and he/she said MALDONADO had called on September 6, 2020 and asked him/her to come help him

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 23
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and LOPEZ-CHAVEZ harvest marijuana plants at their marijuana grow. MALDONADO told CS1 the marijuana grow was in Graham, Washington, but tracking from TT1 showed the phone was located in a rural area south of Chehalis, Washington. CS1 said LOPEZ-CHAVEZ had also encouraged him/her to come help with the work.

74.     On September 15, 2020, agents directed CS1 to call MALDONADO in order to set up a deal for heroin with MALDONADO's cousin, believed to be Jaime LOPEZ.  Previously agents observed MALDONADO with LOPEZ while on surveillance at the Taqueria Zamora at 4314 Portland Avenue, Tacoma, Washington and CS1 had told agents he/she knew people who got heroin from LOPEZ at the Taqueria Zamora.  CS1 did not know LOPEZ's name but rather as another cousin of MALDONADO's, and believed he/she could buy heroin from him.  During the phone call, MALDONADO requested CS1 meet with him.  Agents directed CS1 to agree to the meet.  A short time later, CS1 met with MALDONADO.  MENDEZ-FERNANDO was also present at the meeting, which was observed by agents.  During the meeting, MALDONADO told CS1 that he had brought approximately 40 pounds of methamphetamine up from California with him to sell and there was around 3 pounds left that would be available if CS1 wanted it.  MALDONADO told CS1 that he was leaving that day for California but if CS1 wanted the methamphetamine he/she could contact his "cousin," also known as LOPEZ-CHAVEZ.  MALDONADO also said he had to get back to California because there was approximately 200 pounds of drugs waiting for him to pick up and distribute. MALDONADO agreed to coordinate a deal for heroin with CS1 and Jaime LOPEZ, but suggested he/she wait because Jaime LOPEZ's prices were high and MALDONADO would be bringing heroin on the next trip.  MALDONADO has referred to both LOPEZ-CHAVEZ and Jaime LOPEZ as his "cousin" to CS1 in the past.  Agents believe LOPEZ-CHAVEZ works directly with MALDONADO to distribute drug shipments coming from California, and Jaime LOPEZ is only a periodic customer and not directly involved with distributing MALDONADO's drugs to customers.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 24
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

75.     Shortly after the meeting, surveillance units observed the silver Mitsubishi at 4315 South Warner Street parked in the rear parking area.  I examined camera footage of the location during that time period and observed MALDONADO and MENDEZ-FERNANDO packing up the vehicle in preparation to leave.  A few hours later, GPS tracking on TT1 showed the phone steadily moving south along I-5.

76.     At approximately the same time period that MALDONADO was preparing to leave, surveillance units observed LOPEZ-CHAVEZ exit the front of the residence with an unidentified female and get into a 2007 Jeep Grand Cherokee, Washington license BTW9122 (TV2), parked on the street.  LOPEZ-CHAVEZ was observed walking around the vehicle and checking underneath the car prior to leaving.  Based on my training and experience, I believe LOPEZ-Chavez was possibly checking for a tracking device.

### _MALDONADO Again Returns to Washington and Meets with Courier_

77.     In late September, CS1 told agents that MALDONADO had contacted him/her and said he would be driving up to Washington, but someone else would be driving up the drugs.  I checked phone tolls for TT1 for the month of September and learned the phone had two calls with a 626-206-1830 number on September 23, 2020.

78.     On September 24, 2020, agents observed TT1 moving north from Los Angeles, California on I-5.  The following day, at approximately 11:30 a.m., agents moved into position in the vicinity of 4315 South Warner Street, Tacoma, Washington, the location where MALDONADO, MENDEZ-FERNANDO, and LOPEZ-CHAVEZ had previously been observed, as described above.  Shortly thereafter, agents observed MENDEZ-FERNANDO and MALDONADO arrive at 4315 South Warner Street in a 2020 silver Nissan, California license plate 8PTZ658, and park in front of the residence. The vehicle is registered to the PV Holding Corporation at 5721 West 96th Street, Los Angeles, California.  The PV Holding Corporation is associated with the Avis car rental company.  I checked phone tolls for TT1 during this time frame and learned

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 25
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

MALDONADO made a 24 second outgoing phone call to 626-206-1830 at 11:46 a.m. on September 24, 2020.

79.    At approximately 12:40 p.m., agents observed MENDEZ-FERNANDO and MALDONADO walk to the Nissan and grab two suitcases from the vehicle and walk back inside.  At approximately 1:38 p.m., I observed MALDONADO meet with a 2002 Maroon Acura RSX, Washington license BUF8235, near the rear parking area of the residence.

80.    At approximately 2:12 p.m. I observed, while utilizing electronic surveillance, MALDONADO meet with a gray 2007 Jeep, California license 8PMV038. I observed MALDONADO approach the front passenger side of the vehicle empty handed and talk to the occupant inside.  Shortly thereafter, MALDONADO was handed a large black backpack and he walked inside the residence with it.  Following that, the Jeep departed the area.  I reviewed TT1 phone tolls during this time frame that showed calls with 626-206-1830 at 1:41 p.m., 2:09 p.m., and 2:23 p.m.  No additional calls were made to or from 626-206-1830 that day.  Based on my training and experience, I believe MALDONADO was supplied narcotics by the passengers in the Jeep and they used 626-206-1830 to communicate with him.  I believe MALDONADO contacted his couriers just after his arrival at 11:46 a.m., and later made additional calls to 626-206-1830 before and after picking up the drugs.  This would also line up with what CS1 said regarding MALDONADO using other people to drive the drugs from California to Washington. The 626-206-1830 is subscribed to Betty Sanchez at 4810 North Vicont Avenue, Covina, California.

81.    At approximately 4:00 p.m., I observed, utilizing electronic surveillance, the 2002 Maroon Acura RSX from earlier parked in the rear driveway of the residence. Shortly thereafter, I observed a heavyset white male in a black jacket make multiple trips from the Acura to the residence.  At one point, the unidentified white male opened up the trunk and was searching for something.  Based on my training and experience, I believe the unidentified white male in the Acura was one of MALDONADO's drug customers.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 26
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Agents observed him prior to the suspected drug delivery speaking with MALDONADO and return shortly after the suspected delivery had happened.

*MALDONADO Stops Using TT1*

82.      In early October, GPS tracking for TT1 showed it predominantly in the vicinity of the 4315 South Warner Street residence.  However, agents had observed, using electronic surveillance, that MALDONADO had departed the residence multiple times.

83.      During the week of October 12, 2020, agents spoke with CS1 and he/she said MALDONADO had changed his number to 213-528-1414 (TT3).  Additionally, CS1 said LOPEZ-CHAVEZ had also changed his number to 253-260-7208 (TT4).  CS1 showed agents a text exchange from October 10, 2020 that he/she had with the user of TT4.  In the text exchange, CS1 asked for MALDONADO's new number and was texted the phone number TT3.  CS1 said LOPEZ-CHAVEZ was the user of TT4.

84.      Shortly thereafter, agents conducted phone toll analysis on TT3 to determine if the number was likely being used by MALDONADO.  Agents determined that use of TT3 began in late September, which matched with MALDONADO's recent acquisition of the number.  Additionally, agents compiled a list of seven top callers for TT3.  Of those callers, five were confirmed to have historically been in contact with TT1.

*MALDONADO and LOPEZ-CHAVEZ Travel to Florida*

85.      On October 21, 2020, the Honorable J. Richard Creatura, U.S. Magistrate Judge for the Western District of Washington, authorized real-time GPS tracking of TT3 and TT4.  On October 26, 2020, agents began receiving tracking data on TT3.  On October 30, 2020, agents began receiving tracking information on TT4.  Both phones were located in the vicinity of Tampa, Florida.  On November 24, 2020, agents submitted an administrative subpoena to Expedia, Inc., requesting any travel information for MALDONADO or LOPEZ-CHAVEZ.  Among the flights listed in the data returned by Expedia was a Delta flight booked on October 11, 2020 by LOPEZ-CHAVEZ. According to the flight information provided by Expedia, MALDONADO and LOPEZ-CHAVEZ traveled from Seattle to Miami on October 12, 2020.  The subpoenaed data

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 27
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

included personal information for MALDONADO and LOPEZ-CHAVEZ associated with that October 12, 2020 ticket, including the phone number **562-566-8067 (TT8)** number. I conducted phone toll analysis on the number and learned it was subscribed to Jose MALDONADO at 8953 Santa Fe Avenue, South Gate, California.

86.     Based on MALDONADO and LOPEZ-CHAVEZ's travel to Florida, I conducted phone toll analysis on TT3 (used by MALDONADO) during October. I learned that TT3 was in contact with **360-728-7491 (TT9)**. The number is subscribed to Joseph EASTON at 134 Elm Street, Unit B, Bremerton, Washington. As described further below, EASTON is a suspected drug distributor in Bremerton, Washington, whose criminal history includes felonies for Possession of a Controlled Substance – No Prescription in 2014 and Possession of a Controlled Substance – No Prescription in 2006.

87.     On November 1, 2020, location information for MALDONADO's TT3 showed it moved north from Florida and arrived in the vicinity of Atlanta, Georgia. Location information for TT3 between November 1, 2020 and November 3, 2020, indicated it was in the same general area around Atlanta, specifically near the Fairfield by Marriott Atlanta Gwinnett Place at 3570 Breckinridge Boulevard, Duluth, Georgia. Agents submitted an administrative subpoena to the hotel and learned a Jose MALDONADO, with address 8953 ½ Santa Fe Avenue, South Gate, California, checked into the hotel on November 1, 2020 at 8:12 p.m. and checked out of the hotel on November 3, 2020 at 1:36 p.m. MALDONADO provided **TT8** as a contact number for the hotel.

88.     In the afternoon of November 3, 2020, location information for TT3 showed it began traveling from the Fairfield by Marriott Atlanta Gwinnett Place hotel to the vicinity of Blytheville, Arkansas. On November 4, 2020, location information showed TT3 moved southeast from Blytheville and steadily moved east through Georgia and back to the vicinity of Tampa, Florida. I reviewed phone toll data for TT3 between November 3, 2020 and November 4, 2020. I learned TT3 was in contact with an 870-740-6859 number on November 3, 2020, and that "870" is an area code that includes

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 28
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Blytheville, Arkansas.  I gathered phone toll data on 870-740-6859 and learned between October and November the number had been in contact with MALDONADO's 562-566-8236 number (described above in connection with MALDONADO's activities in February-May 2020) and TT1.  Additionally, on November 3, there was contact between 870-740-6859 and 562-566-8236 for one call and then the user of 870-740-6859 began contacting TT3.  I know that 562-566-8236 is a number MALDONADO used during a trip to Memphis, Tennessee in February/March 2020.  Location information on 562-566-8236 at that time showed movement between Memphis and Blytheville.  Based on training and experience, and the toll information described above, I believe the call between 870-740-6859 and 562-566-8236 on November 3, 2020 possibly enabled the user of 870-740-6859 to acquire MALDONADO's TT3 number.

89.     On November 11, 2020, location information for TT3 and TT4 showed both phones travelled from Tampa to the vicinity of the Orlando airport.  A few hours later, location information for TT3 showed it in the vicinity of Los Angeles, California and TT4 in the vicinity of Tacoma, Washington.  A review of the Expedia data showed LOPEZ-CHAVEZ booked a Delta flight for MALDONADO for November 11, 2020 from Orlando, Florida to Los Angeles, California.

*MENDEZ-FERNANDO Comes to Washington in late November 2020*

90.     On November 21, 2020, agents directed CS1 to contact MALDONADO in order to set up a controlled buy of methamphetamine from LOPEZ-CHAVEZ.  Location information for TT3 showed MALDONADO was still in Los Angeles and location information for TT4 showed LOPEZ-CHAVEZ in Tacoma, Washington.  CS1 contacted MALDONADO, using TT3, and MALDONADO told CS1 that it would be better if he/she waited because a drug shipment was coming up soon.  MALDONADO said MENDEZ-FERNANDO would be driving the drugs to Tacoma and CS1 could meet with LOPEZ-CHAVEZ and MENDEZ-FERNANDO to do the deal.  MALDONADO said he wanted CS1 to get the drugs from LOPEZ-CHAVEZ but give the money to MENDEZ-FERNANDO.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 29
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

91.     On November 23, 2020, CS1 informed agents that MALDONADO had contacted him/her and said the drugs had arrived in Washington.  MALDONADO indicated CS1 could pick the drugs up whenever he/she wanted, but that MENDEZ-FERNANDO would be returning to California on November 26, 2020.  CS1 also told agents MALDONADO was contacting him/her on a new number, 213-758-9413 (TT5).

92.     On November 24, 2020, at approximately 2:00 p.m., agents met with CS1 at a pre-determined neutral location in order to do a controlled buy with LOPEZ-CHAVEZ and MENDEZ-FERNANDO.  Agents searched CS1's vehicle and person with negative results.  Agents instructed CS1 to contact MALDONADO, using TT5, and set up a deal for ½ pound of methamphetamine.  In the presence of law enforcement, CS1 contacted MALDONADO on TT5, and he confirmed CS1 could meet with MENDEZ-FERNANDO at the Tacoma Mall at 4502 Steele Street, Tacoma, Washington, in order to do the deal.  I believe the caller speaking with CS1 was MALDONADO based on audio recordings I've listened to from previous interactions with MALDONADO, and previous calls between CS1 and MALDONADO that I have been present for.

93.     At approximately 2:30 p.m., agents equipped CS1 with a listening/recording device, gave him/her the pre-recorded funds to do the deal, and told him/her to try and get MENDEZ-FERNANDO's number.  Simultaneously, surveillance units gathered in the vicinity of the JC Penny at the Tacoma mall in order to identify MENDEZ-FERNANDO's vehicle and provide security for CS1.  Agents then directed CS1 to drive to the JC Penny.  Surveillance was maintained on CS1 for the entire duration of the drive to the deal location.

94.     At approximately 2:45 p.m., agents observed CS1 arrive at the deal location and park.  Shortly thereafter, agents observed a white 2020 Dodge Charger, Washington license BVX5243, arrive and park next to CS1's vehicle.  The Charger was registered to EAN Holdings LLC at 500 Naches Avenue SW, Renton, Washington.  EAN Holdings LLC is associated with Enterprise rental vehicles.  A few minutes later, agents observed MENDEZ-FERNANDO exit the Charger and get into CS1's vehicle.  Approximately 10

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 30
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

minutes later, agents observed MENDEZ-FERNANDO exit CS1's vehicle and get back into the Charger. Shortly thereafter, CS1's vehicle departed the area. Surveillance was maintained on CS1 along the entire route back to the neutral location.

95.     At approximately 3:15 p.m., agents met with CS1 at the neutral location and searched his/her vehicle and person with negative results. CS1 handed agents a brown paper bag with a vacuumed sealed bundle of suspected methamphetamine inside and the listening/recording device. I asked CS1 to describe how the deal went. CS1 said he/she met with MALDONADO's friend (MENDEZ-FERNANDO) and he gave him/her approximately a pound of methamphetamine. I asked CS1 why it wasn't just the ½ pound that was ordered, and CS1 said they didn't want to break up the pound, likely because it was heat sealed. I confirmed they expected payment for the other ½ pound, and CS1 said they would. I acknowledged the statement and asked if there were any other details during the meet. CS1 said he/she was able to get MENDEZ-FERNANDO's number by taking his phone and calling his/her phone. I requested CS1 show me his/her phone log and saw the last call was from phone number **310-904-2025 (TT6)**, made during the approximate time frame of the deal. I recognized the number as being a frequent caller for MALDONADO's TT3. I asked CS1 if there were any other details and he/she said no. I told CS1 we would not be paying MENDEZ-FERNANDO before he was supposed to leave on November 26, 2020. CS1 acknowledged the statement and I concluded the debrief.

96.     At approximately 5:00 p.m., agents terminated the operation and field tested the methamphetamine. It returned presumptive positive for the presence of methamphetamine. Additionally, I reviewed the audio and video from the deal and confirmed CS1's version of getting MENDEZ-FERNANDO's number. MENDEZ-FERNANDO also inquired of CS1 when he/she would pay for the additional methamphetamine before exiting the vehicle.

*MALDONADO Returns to Washington in December 2020*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

97.     On December 6, 2020, CS1 informed agents that MENDEZ-FERNANDO had contacted him/her, using **TT6**, about payment for the remainder of the methamphetamine.  CS1 said MENDEZ-FERNANDO had come back to Washington and would be in town a few days.  A few hours later, CS1 informed agents that he/she had talked with MALDONADO and that he was also in Washington with MENDEZ-FERNANDO and that AMADOR-GARCIA came up as well.  CS1 said MALDONADO had contacted him/her using a different number, 424-308-1779 (TT7).  Agents instructed CS1 to arrange for a meeting with MALDONADO to pay for the methamphetamine.

98.     On December 8, 2020, agents met with CS1 at a pre-determined neutral location and searched his/her vehicle and person with negative results.  Following that, I asked CS1 if everything was set for the meeting with MALDONADO.  CS1 said he/she had received multiple texts and calls from MALDONADO that day, from TT7, asking when and where CS1 could meet.  Agents directed CS1 to tell MALDONADO he/she could meet at the Tacoma Mall at 4502 Steele Street, Tacoma, Washington.  In the presence of law enforcement, CS1 called MALDONADO, at TT7, and he agreed to meet him/her in the parking lot of the JC Penny at the mall.

99.     At approximately 2:00 p.m., surveillance units moved into position at the mall in order to provide over watch of CS1 during the meeting and identify the vehicle MALDONADO was using. Simultaneously, agents equipped CS1 with a listening/recording device and provided him/her with the funds to pay MALDONADO. Following that, they instructed CS1 to drive to the deal location and wait for MALDONADO.  Surveillance was maintained on CS1 along the entire route to the meeting location.

100.     At approximately 2:15 p.m., CS1 arrived at the JC Penny store and parked. Shortly thereafter, agents observed MALDONADO walk from the JC Penny to CS1's vehicle and open up the passenger door.  Following that, MALDONADO leaned into the vehicle for a short period and then stepped back and had a discussion with CS1 for approximately 10 minutes.  At the conclusion of the discussion, agents observed CS1

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 32
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

drive from the parking lot and MALDONADO return to the mall.  Surveillance was
maintained on CS1's vehicle along the entire route back to the neutral location.

101.    At approximately 2:30 p.m., agents met with CS1 at the neutral location
and searched his/her person and vehicle with negative results.  Following that, I took
possession of the listening/recording device and asked CS1 to provide details of the
meeting.  CS1 said MALDONADO told him/her that he was leaving for California after
their meeting.  CS1 also said MALDONADO spoke about more methamphetamine
coming up and that it was high quality.  He/she said MALDONADO showed him/her a
picture on his phone of the drugs ready to be brought to Washington.  I acknowledged the
information and concluded the debrief.  The following day I reviewed the audio and
video from the deal, and it matched the information CS1 provided to agents.

### MALDONADO Meets with Suspected Customers in December 2020

102.    On December 11, 2020, the Honorable Theresa L. Fricke, U.S. Magistrate
Judge for the Western District of Washington, authorized GPS tracking on TT5, **TT6,**
and TT7.  On December 15, 2020, I initiated GPS tracking on TT5, **TT6**, and TT7.
Location information on TT5 and TT7 (both used by MALDONADO as described
above) showed the phones in the vicinity of Los Angeles, California.  Location
information on **TT6** (used by MENDEZ-FERNANDO) showed the phone in the vicinity
of Tukwila, Washington.  Later that day, agents were contacted by CS1 and told
MALDONADO would be driving up from California in the next few days.

103.    On December 16, 2020, I observed location information on TT7 showing
the phone north of Los Angeles, approaching Bakersfield, California.  I continued to
monitor location information for TT7 as it moved steadily north through California to
Oregon and finally Washington.  On December 17, 2020, location information on TT7
showed it stopped at the Doubletree Suites by Hilton Hotel at 16500 Southcenter
Parkway, Seattle, Washington.

104.    On December 18, 2020, at approximately 11:58 a.m., I observed location
information for TT7 that put the phone near 2510 15th Street, Bremerton, Washington.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 33
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Bremerton SOG detectives assumed surveillance at that location in order to identify MALDONADO and MENDEZ-FERNANDO.  Upon arrival in the area, Bremerton SOG detectives observed a silver Mazda SUV, Nevada plate 465L59, parked in front of the residence.  A detective identified MALDONADO sitting in the front passenger seat of the Mazda and watched MENDEZ-FERNANDO coming and going from the residence to the Mazda.  Shortly thereafter, the vehicle departed the area.  Following the surveillance, I learned from Bremerton SOG that the residence was known by Bremerton detectives to be associated with Stanley Henry FROGGATT, a suspected drug distributor in Bremerton, Washington.

105.    Later that afternoon, location information on TT7 showed it in the vicinity of 7211 201st Street East, Spanaway, Washington.  The residence at that location is associated with Daniel and Alexi ENGLISH.  CS1 had previously told agents that Daniel ENGLISH is a drug associate of MALDONADO.  Following that, location information showed TT7 traveled from Spanaway to the Taqueria Zamora at 4314 Portland Avenue East #8, Tacoma, Washington.  As described above, agents have previously observed MALDONADO at the Taqueria Zamora restaurant interacting with Jaime LOPEZ.  CS1 had previously told agents that LOPEZ is supplied by MALDONADO.  On this occasion, utilizing a positional camera with a view of the restaurant and parking area, agents observed the Mazda arrive and park.  Shortly thereafter, MENDEZ-FERNANDO exited the vehicle, walked to a nearby taco stand for a brief time, and then walked inside the taqueria.  Upon exiting the taqueria, MENDEZ-FERNANDO walked to the front passenger window of the Mazda and interacted with someone, believed to be MALDONADO.  Following that, MENDEZ-FERNANDO walked back to the taco stand for a short period of time before returning to the Mazda and departing the area.  Based on location information from TT7 from that day in the vicinity of suspected drug customers in Spanaway and Bremerton, physical surveillance on MALDONADO and MENDEZ-FERNANDO at the suspected drug customers' house in Bremerton, and MENDEZ-FERNANDO appearing to order and pick up food at the taco stand outside the taqueria.  I

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 34
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

believe, based on my training and experience, MALDONADO and MENDEZ-FERNANDO traveled to the Taqueria Zamora on drug business.

106.     On December 19, 2020, at approximately 10:45 a.m., location information from TT7 showed the phone traveling to Bremerton, Washington.  Agents continued to monitor the phones movement and saw the phone was stopped in the vicinity of 2510 15th Street, Bremerton, Washington (associated with FROGGATT) before moving back to the hotel.  Later that day, location information showed TT7 on I-5 moving south through Centralia, Washington.  The following day, tracking on TT7 showed it in the vicinity of Los Angeles, California.  Tracking on **TT6** also showed it back in Los Angeles.

### *MENDEZ-FERNANDO Meets with Joseph EASTON in Tacoma*

107.     On December 27, 2020, a Bremerton SOG detective notified me that CS3 had called with information on Joseph EASTON.  Specifically, CS3 said that EASTON was planning on resupplying the following day (December 28, 2020).  CS3 also said EASTON gave his supplier a phone to communicate exclusively with him (EASTON) about drug business.  Agents believed the supplier CS3 referenced was MALDONADO based on TT3's phone toll data showing a call from **TT9** in October 2020.  CS3 said EASTON talked with his drug customers in Kitsap county on his other phone.

108.     Later that day, I checked location information on MALDONADO's TT7 and MENDEZ-FERNANDO's **TT6** and saw TT7 was still in the vicinity of Los Angeles, California.  However, **TT6** was moving north through Oregon, almost into Washington.  I contacted Enterprise rental vehicles and learned MENDEZ-FERNANDO had rented a white 2020 Toyota RAV4, Oregon license 500LJK, on December 24, 2020.

109.     On December 28, 2020, at approximately 7 a.m., I checked location information on **TT6** and saw it was within the vicinity of the La Quinta Inn and Suites at 1425 East 27th Street, Tacoma, Washington.  Following that, I contacted a WESTNET detective and requested surveillance at EASTON's residence at 134 Elm Street, Bremerton, Washington.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 35
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

110.     At approximately 8:30 a.m., I arrived at the La Quinta Inn and Suites and identified a white 2020 Toyota RAV4, Oregon license 500LJK, backed into a parking space near the entrance to the hotel.  I established surveillance on the vehicle. Approximately 20 minutes later, I observed MENDEZ-FERNANDO walk from the hotel to the RAV4 with no visible bags in his hands.  MENDEZ-FERNANDO was wearing dark pants and a dark hooded sweatshirt with a PUMA logo on the front.  I watched MENDEZ-FERNANDO walk to the rear of the vehicle and open the rear hatch. Following that, MENDEZ-FERNANDO appeared to be leaning into the rear of the vehicle to re-position items.  At this point, I first observed a large white/gray shopping bag that MENDEZ-FERNANDO was filling with items from the rear of the vehicle. MENDEZ-FERNANDO filled the bag, closed the rear hatch, and moved to the driver's side of the vehicle to grab a small black bag from the backseat.  I observed that the shopping bag was heavily weighted down.  MENDEZ-FERNANDO then walked from the vehicle and back into the hotel with the white/gray shopping bag and small black bag.

111.     At 11:55 a.m., a WESTNET detective, utilizing a positional camera installed outside of 134 Elm Street, Unit B, Bremerton, Washington, observed a blue 2020 Nissan Altima, California license 8KXM150, arrive and park at the residence. Shortly thereafter, the detective observed a heavyset white male matching EASTON's appearance get into the vehicle and depart the area.  The vehicle was registered to EAN Holdings LLC at 14002 East 21st Street, Suite 1500, Tulsa, Oklahoma.  I know EAN Holdings LLC is associated with Enterprise rental vehicles.  I contacted Enterprise and learned that Joseph EASTON at 134 Elm Street, Unit B, Bremerton, Washington had rented the vehicle on December 15, 2020, and provided two phone numbers: **TT9** and 360-473-3035.  I also learned the vehicle was due to be returned on December 31, 2020.

112.     At approximately 12:30 p.m., I observed MENDEZ-FERNANDO walk from the hotel empty handed, get into the RAV4, and depart the area.  Surveillance units were able to maintain loose contact with MENDEZ-FERNANDO as he traveled through Tacoma.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 36
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

113.   At approximately 1:30 p.m., I observed the RAV4 driving south on I-5 from Tacoma to Highway 512 headed east to Puyallup, Washington.  Agents discontinued physical surveillance and monitored location information for **TT6** as it traveled from Puyallup to Spanaway and finally back into Tacoma.

114.   At approximately 5:15 p.m., agents observed the RAV4 driving east on 38th Street towards the exit to I-5 going north.  Shortly thereafter, agents drove back to the La Quinta hotel and identified the RAV4 parked there.  Surveillance units established position at the hotel in order to watch for EASTON's blue Nissan Altima.

115.   At approximately 5:30 p.m., agents observed the blue 2020 Nissan Altima, California license 8KXM150, arrive and park at the hotel.  Shortly thereafter, SA Rodenberg observed MENDEZ-FERNANDO, wearing the PUMA sweatshirt from earlier, walk from the hotel to the Nissan.  SA Rodenberg observed that MENDEZ-FERNANDO was talking on a cell phone as he walked to the Nissan.  Following that, SA Rodenberg observed MENDEZ-FERNANDO and EASTON walk from the Nissan into the hotel.  EASTON was carrying a small black bag in his hands.

116.   At approximately 5:55 p.m., SA Eric Rodenberg observed EASTON walk from the hotel to the Nissan with a weighted gray/white shopping bag. EASTON got into the vehicle and departed the area.  Surveillance units attempted to follow EASTON from the hotel but lost contact a short time later. I showed SA Rodenberg a picture of the shopping bag MENDEZ-FERNANDO carried into the hotel that morning, and he said it was the same EASTON carried out, except the bag appeared slightly less full when EASTON carried it out.

117.   Later in the evening, I checked location information on **TT6** that showed the phone traveling south on I-5.  The following day, I checked location information and confirmed **TT6** was back in California.  Additionally, on the morning of December 29, an investigator drove past EASTON's residence and observed the blue Nissan Altima parked in the driveway.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 37
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

118.    On January 11, 2020, I examined phone toll data for **TT8** (used by MALDONADO in connection with his October/November 2020 trip to the Southeast, as described above) and **TT6** (used by MENDEZ-FERNANDO) from December 28, 2020. Phone toll data shows 3 calls between **TT8** and **TT6** between 5:30 to 5:45 p.m. Specifically, there were calls at 5:32 p.m., 5:38 p.m., and 5:45 p.m.  Based on my training and experience, I believe MENDEZ-FERNANDO and MALDONADO were on **TT6** and **TT8** respectively to facilitate the drug transaction with EASTON.  Agents know that MALDONADO has brokered previous deals with CS1 and CS1 has said that MENDEZ-FERNANDO's command of English is not good.

119.    Agents also conducted phone toll analysis of **TT9** and identified multiple numbers associated to possible drug customers.  Specifically, 360-535-1401 associated with Christine DOUGHERTY and 360-842-9970 associated with Chad GIBBS.  Agents researched DOUGHERTY and GIBBS and learned that in September 2020, Dougherty was arrested by the Bremerton Police Department for Manufacture/Delivery of Amphetamine/Methamphetamine.  As for GIBBS, his criminal history shows felonies in November 2017 for Possession of a Controlled Substance – No Prescription.  Based on EASTON's using **TT9** to rent the vehicle that met with MENDEZ-FERNANDO, **TT9**'s contact with TT3 in October 2020, and the suspected drug customers identified from **TT9**'s phone toll information, I believe, based on my training and experience, that **TT9** is the phone CS3 said EASTON uses to conduct drug business.

_MALDONADO Returns to Washington in January 2021_

120.    On January 13, 2021, CS1 contacted agents and told them MALDONADO had called with a new number.  Earlier that day, I had checked tracking information on TT7 and saw the number was showing as "absent subscriber", which typically indicates it is no longer in use.  I asked CS1 for the new number and he/she said **(442) 363-2754 (TT10)**.  Agents asked CS1 why MALDONADO contacted him/her, and CS1 said MALDONADO would be driving up from California on Monday (January 18, 2021).  CS1 said MALDONADO wanted CS1 to introduce him to additional drug

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 38
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

customers in Washington.  Agents directed CS1 to tell MALDONADO he/she had an associate that could buy methamphetamine from him.

121.    On January 19, 2021, agents conducted phone toll analysis on **TT10** to determine if the number was likely being used by MALDONADO.  Agents determined that use of **TT10** began in early January 2021, which matched with MALDONADO's recent acquisition of the number.  Additionally, agents compiled a list of top callers for **TT10**.  Of those callers, five were confirmed to have historically been in contact with TT7.

122.    On January 19, 2021, at approximately 10:00 a.m., I checked location information on **TT6** and learned the phone was moving north through southern Oregon. Later that evening, location information on TT6 showed it in the vicinity of Tukwila, Washington.

123.    On January 20, 2021, I contacted AVIS rental vehicles and learned MALDONADO had rented a gray 2020 Nissan Altima, Washington license BTP3021, on January 18, 2021.  Later that day, agents on surveillance identified the Altima parked at the Residence Inn by Marriott at 16201 West Valley Highway, Tukwila, Washington. Shortly thereafter, agents identified MENDEZ-FERNANDO walk to the vehicle with an unidentified Hispanic male, possibly LOPEZ-CHAVEZ, and depart the area.

### USE OF LOCATION DATA

124.    Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI").  The unique identifiers -- as transmitted from a cellular device to a cellular antenna or tower -- can be recorded by

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 39
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

pen-traps and indicate the identity of the cellular device making the communication without revealing the communication's content.  Currently, **TT6** has IMSI: 310260658917394 and IMEI: 353057104345630, **TT8** has IMSI: 310260271923207 and IMEI: 353235109204950, **TT9** has IMSI: 310240138880692 and no IMEI information, **TT10** has IMSI: 310260041289038 and IMEI: 352769720734120

125.    Based on my training and experience, I know that when a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course.  The unique identifiers -- as transmitted from a cell phone to a cellular antenna or tower -- are like the telephone number of an incoming call.  They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content.  In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

126.    Based my training and experience, I know that a cell phone can also be used to exchange text messages with email accounts.  The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

127.    Based on my training and experience, I know that cellular phones can connect to the internet via a cellular network.  When connecting through a cellular network, internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI.  Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 40
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

communication.  Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

128.    In my training and experience, I have learned that each of the wireless providers listed in Attachment A-1 and A-2 is a company that provides cellular telephone access to the general public.  I also know that certain providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data (also known as GPS data or latitude-longitude data) and cell-site data (also known as "tower/face information" or cell tower/sector records).  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the cell towers (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

129.    Based on my training and experience, I know that the each of the wireless providers listed in Attachment A-1 and A-2 can collect E-911 Phase II data about the location of the Target Telephones, including by initiating a signal to determine the location of the Target Telephones on the wireless provider's networks or with such other reference points as may be reasonably available.

130.    When using a cellular connection to receive or transmit data, a cellular phone typically utilizes a cell tower to make telephone calls, send or receive text messages, send or receive emails, surf the internet, carry out application-initiated data transfers, among other things.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 41
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

131.    Based on my training and experience, I know that each of the wireless providers listed in Attachment A-1 and A-2 can collect cell-site data about the Target Telephones.  Based on my training and experience, I know that for each communication (including data connections) a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as T-Mobile and Sprint typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

132.    Different service providers use different systems, applications, and reports to collect or analyze cell site data.  These systems, applications, and reports are referred to by a variety of names including, but not limited to real-time tool or "RTT" (Verizon), Periodic Location Updates or "PLU" (Verizon), per call measurement data or "PCMD" (Sprint), Network Event Location System or "NELOS" (AT&T), EVDO, ALULTE, Timing Advance, and TruCall.   RTT data, for example, estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower.  This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

133.    Based on my training and experience, I know that wireless providers such as the wireless providers listed in Attachment A-1 and A-2 typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service.  I also know that wireless providers such as T-Mobile and Sprint typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 42
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

communications sent or received by a particular device and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Telephone's user or users and may assist in the identification of co-conspirators and/or victims.

134.   Modern cell phones allow users to switch their telephone numbers, use multiple telephone numbers on a single device, and transfer their telephone number to a different cell phone.  These changes can be made with the assistance of the wireless provider or by taking actions such as changing the "SIM card" (short for "subscriber identity module card") of a cellphone.  To provide for any such changes made to the Target Telephones, Attachment A-1 and A-2 specify that the property to be searched includes:  (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

### AUTHORIZATION REQUEST

135.   Based on the foregoing, I request that the Court issue the proposed search warrants and pen-trap orders, pursuant to Federal Rule of Criminal Procedure 41, 18 U.S.C. § 2703(c), and 18 U.S.C. § 3123.

136.   I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 43
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

delay notice to the subscriber or user of the Target Telephones until 90 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

137.    I further request that the Court direct the each of the wireless providers listed in Attachment A-1 and A-2 to disclose to the government any information described in Attachment B that is within the possession, custody, or control of the wireless provider.  I also request that the Court direct each of the wireless providers listed in Attachment A-1 and A-2 to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the wireless provider's services, including by initiating a signal to determine the location of the Target Telephones on the wireless provider's network or with such other reference points as may be reasonably available.  The agency shall reasonably compensate the each of the wireless providers listed in Attachment A-1 and A-2 for reasonable expenses incurred in furnishing such facilities or assistance.

138.    Pursuant to 18 U.S.C. § 2703(g), the government will execute this warrant by serving the warrant on T-Mobile and Sprint.  Because the warrant will be served on T-Mobile and Sprint, who will then compile the requested records and data, reasonable

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 44
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  cause exists to permit the execution of the requested warrant at any time in the day or
2  night. I therefore request that the Court authorize execution of the warrant at any time of
3  day or night, owing to the potential need to locate the Target Cell Phone outside of
4  daytime hours.

Steven Meyer, Affiant
Special Agent
DEA

10  The above-named agent provided a sworn statement to the truth of the foregoing
11  affidavit by telephone on this 22nd day of January, 2021.

J. RICHARD CREATURA
United States Magistrate Judge

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 45
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**EXHIBIT 1**


DECLARATION

I, Benjamin T. Diggs, declare as follows:

1.      I am a duly appointed Assistant United States Attorney for the Western District of Washington, and I have primary responsibility for representing the interests of the United States herein.

2.      I make this declaration in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) with an integrated pen-trap order pursuant to 18 U.S.C. §§ 3122 and 3123.  Pursuant to 18 U.S.C. § 3122(a)(1), I am the applicant for purposes of the pen-trap portion of the requested warrant and order.

3.      Pursuant to 18 U.S.C. § 3122(b), I certify that the DEA is the law enforcement agency conducting the investigation in this matter and that the information likely to be obtained from the requested warrant is relevant to an ongoing criminal investigation being conducted by that agency.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Application is made on the basis of information officially furnished, and on that basis I verily believe such information to be true.

Executed this 22nd day of January, 2021.


*/s/ Benjamin T. Diggs*
Benjamin T. Diggs
Assistant United States Attorney

EXHIBIT 1 -- PAGE 1
USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT A-1

### Property to Be Searched and Subscriber/Subject Information

1.       Records and information associated with the cellular phones:

a.       **Target Telephone 6** (**TT6**): a mobile telephone assigned the number 310-904-2025 and International Mobile Subscriber Identity (IMSI) number 310260658917394.  **TT6** is a cellular telephone with service provided by T-Mobile, a wireless telephone service provider located at 12920 SE 38th Street, Bellevue, Washington, 98006.  **TT6** is subscribed to Fernando Lopez at 4913 w 141st Street, Hawthorne, California, and is believed to be used by Lopez MENDEZ FERNANDO Alcides.

b.       **Target Telephone 8 (TT8)**: a mobile telephone assigned the number 562-566-8067 and International Mobile Subscriber Identity (IMSI) number 310260271923207.  TT8 is a cellular telephone with service provided by T-Mobile, a wireless telephone service provider located at 12920 SE 38th Street, Bellevue, Washington, 98006.  TT8 is subscribed to Jose MALDONADO at 8953 Santa Fe Avenue, South Gate, California.  TT8 is described herein and in Attachment A.  Service to TT8 began on July 29, 2020.

c.       **Target Telephone 10 (TT10)**: a mobile telephone assigned the number 442-363-2754 and International Mobile Subscriber Identity (IMSI) number 310260041289038.  **TT10** is a cellular telephone with service provided by T-Mobile, a wireless telephone service provider located at 12920 SE 38th Street, Bellevue, Washington, 98006.  **TT10** is subscribed to Carlos Gutierrez at 496 Street Avenue, Bell Gardens, California, but believed to be used by Jose MALDONADO.  **TT10** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B. Service to **TT10** began on January 3, 2021.

2.       The property to be searched includes:  (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to

the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

      3.      "T-Mobile" is identified in Attachment B as the "**Wireless Provider.**"

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A-2**

**Property to Be Searched and Subscriber/Subject Information**

1.      Records and information associated with the cellular phones:

        a.      **Target Telephone 9 (TT9)**: a mobile telephone assigned the number 360-728-7491 and International Mobile Subscriber Identity (IMSI) number 310240138880692.  **TT9** is a cellular telephone with service provided by Sprint, a wireless telephone service provider located at 6360 Sprint Parkway, Overland Park, Kansas.  **TT9** is subscribed to Joseph EASTON at 134 Elm Street, Unit B, Bremerton, Washington.  **TT9** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.  Service to **TT9** began on December 19, 2020.

2.      The property to be searched includes:  (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

3.      "Sprint" is identified in Attachment B as the "**Wireless Provider.**"

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**Particular Things to be Seized**

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127.  As such, this warrant authorizes the collection of subscriber records, pen-trap data, and cell site data information regarding the Target Cell Phone. **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).**  Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below.  *See* 18 U.S.C. § 3103a(b)(2).

**I.     Section I:  Information to be Disclosed by the Wireless Provider**

1.     **Subscriber/Account Information.**  The following non-content information about the customers or subscribers associated with the Accounts listed in Attachment A-1 and A-2:

        a.     Names (including subscriber names, user names, and screen names);

        b.     Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        c.     Local and long-distance telephone connection records for 60 days prior to January 22, 2021;

        d.     Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions for 60 days prior to January 22, 2021;

        e.     Length of service (including start date) and types of service utilized;

        f.     Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"),

ATTACHMENT B -- PAGE 1

USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Mobile Equipment Identifier ("MEID"), Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        g.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

        h.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

    2.    **Pen Register/ Trap and Trace Data and Associated Subscriber Records to Be Provided for a Period of <u>45 Days from January 22, 2021</u>.**

        a.    The Wireless Provider shall install and monitor pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Telephone including the date, time, and duration of the communication, and the following, without geographic limit and without notice to the subscriber:

    (i)    IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

    (ii)    Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone number described in Attachment A-1 and A-2, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

    (iii)    IP addresses of any websites or other servers to which the cell phone device or devices connected; and

    (iv)    Source and destination telephone numbers and email addresses.

        b.    On a 24-hour-a-day basis, for the duration of the authorized pen-trap devices, the Wireless Provider shall provide the following records for those subscribers

ATTACHMENT B -- PAGE 2

USAO # 2020R00567

whose identifiers are obtained pursuant to the use of the pen-trap devices: published or non-published subscriber names and addresses, including billing addresses.

   3. **Historical Cell Cite Location Information.**

    a. All records and other information (**<u>not</u> including the contents of communications**) relating to wire and electronic communications sent or received by the Account from **November 22, 2020 through January 22, 2021,** including:

     i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

     ii. historical cell site information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received. This information is to be provided irrespective of the application, name, or report utilized by the Wireless Provider. Accordingly, this information includes the following data sets to the extent that they are collected by the Wireless Provider: RTT, PLU, PCMD, NELOS, EVDO, TruCall, ALULTE, and Timing Advance.

    b. The physical address and coverage maps of cell towers used by the Target Telephone(s).

   4. **Prospective Cell Site Location Information.**

    a. All information about the location of the Target Cell Phone described in Attachment A **for a period of 45 days from January 22, 2021**, during all times of day and night. This information includes: precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone or account described in Attachment A-1 and A-2.

ATTACHMENT B -- PAGE 3

USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b.     The physical address and coverage maps of cell towers used by the Target Telephone(s).

5.     **Prospective E-911/GPS and Cell Site Triangulation Information.**

a.     All information about the location of the Target Cell Phone described in Attachment A-1 and A-2 **for <u>a period of 45 days from January 22, 2021</u>**, during all times of day and night.  This information includes: all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A-1 and A-2.

b.     The physical address and coverage maps of cell towers used by the Target Telephone(s).

To the extent that the cell site information described in the previous paragraphs (hereinafter, "Location Information") is within the possession, custody, or control of the Wireless Provider, the Wireless Provider is required to disclose the Location Information to the government pursuant to this warrant.  In addition, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), the Wireless Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Wireless Provider's services.  The government shall compensate the Wireless Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.     <u>Section</u> II:  Information to Be Seized by the Government**

1.     All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841 and 846 involving the DTO described herein as well as Money Laundering, and conspiracy to commit the same, in violation of 18 U.S.C. § 1956.

ATTACHMENT B -- PAGE 4

USAO # 2020R00567

2.      All non-content subscriber/account information provided pursuant to 18 U.S.C. § 2703(c).

3.      All non-content dialing, routing, addressing, and signaling information provided pursuant to 18 U.S.C. §§ 3121-3127.

4.      Location Information regarding the Target Telephones.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Wireless Provider in order to locate the things particularly described in this Warrant.

ATTACHMENT B -- PAGE 5

USAO # 2020R00567

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970